William Sokalsky, Jr.,            :
                Petitioner    :
                                  :
            v.                 :
                                  :
Workers' Compensation Appeal    :
Board (Bradley Graphics Solutions, Inc. :
and Erie Flagship Insurance Company  :
a/k/a Erie Insurance Company),     :    No. 824 C.D. 2016
                Respondents  :

Erie Insurance Company a/k/a      :
Flagship City Insurance Company,   :
                Petitioner    :
                                  :
            v.                 :
                                  :
Workers' Compensation Appeal    :
Board (Sokalsky, Jr., and Bradley   :
Graphics Solutions, Inc., and      :
LMI Insurance Co. (In Bankruptcy)   :
and State Workers' Insurance Fund),  :    No. 1467 C.D. 2016
                Respondents  :    Submitted: March 9, 2018

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                      FILED: October 29, 2018

        William Sokalsky, Jr. (Claimant) petitions this Court for review of the portion of the Workers' Compensation (WC) Appeal Board's (Board) April 22, 2016 order reversing the Workers' Compensation Judge's (WCJ) ruling that Erie Insurance Company a/k/a Flagship City Insurance Company (Erie) was responsible for

Claimant's benefits after December 17, 2002, and affirming the WCJ's May 9, 2014 decision dismissing Claimant's Petition for Penalties (Penalty Petition).[1] Essentially, Claimant presents three issues for this Court's review: (1) whether the Board erred by reversing the WCJ's December 16, 2013 determination that Claimant's October 12, 2000 work injury recurred as of December 17, 2002;[2] (2) whether the Board erred by affirming the WCJ's May 9, 2014 denial of his Penalty Petition; and (3) whether the WCJ's and the Board's Penalty Petition determinations were reasoned decisions.

In addition, Erie petitioned this Court for review of the Board's August 22, 2016 order denying its Petition for Rehearing (Rehearing Petition) from the Board's April 22, 2016 decision that Erie is responsible for Claimant's WC benefits for work injuries sustained on December 28, 1994, February 9, 1995 and July 1, 1997.[3] Erie's sole issue on appeal was whether the Board erred by denying Erie's Rehearing Petition.

On December 28, 1994, while employed by Bradley Graphic Solutions, Inc. (Employer) as a collator operator, Claimant was involved in a work-related accident during which his hair became caught in the spinning machine drum. As a result, his neck was twisted, resulting in headaches and pain radiating into both upper extremities that was aggravated by shoulder movement. LMI Insurance Company

---

[1] This appeal is docketed at No. 824 C.D. 2016.

[2] Claimant's Statement of Questions Involved listed as the first four issues: (1) whether the Board exceeded its appellate authority relative to Findings of Fact 13 and 14, and Conclusions of Law 2, 3 and 4; (2) whether the Board exceeded its authority by reversing the WCJ's December 16, 2013 determination that Claimant's original work injury recurred; (3) whether the Board erred by reversing the WCJ's finding that Claimant suffered a recurrence as of December 17, 2002; and (4) whether the Board erred by exculpating Erie from liability after December 17, 2002. *See* Claimant Br. at 5. Because these issues are subsumed in the analysis of whether the Board erred by reversing the WCJ's December 16, 2013 determination that Claimant's October 12, 2000 work injury recurred as of December 17, 2002, the issues have been combined herein.

[3] This appeal is docketed at No. 1467 C.D. 2016.

(LMI) was Employer's WC insurance carrier at that time.[4] Claimant nevertheless continued to work. *See* Reproduced Record (R.R.) at 177a. On February 9, 1995, Claimant was involved in a second work accident involving his neck, head and back. *See* R.R. at 177a. On July 1, 1997, Claimant had a third work accident involving his right leg, neck and back. *See* R.R. at 178a. Because these injuries did not preclude Claimant from doing his pre-injury job, he did not lose income and, therefore, was not disabled.[5] *See* R.R. at 178a.

On October 12, 2000, because Claimant's headaches and neck and upper extremity pain became progressively worse and rendered him unable to perform his job, his treating physician ordered him to stop working. *See* R.R. at 180a-185a. Erie was Employer's WC insurance carrier from 1998 through 2001. *See* R.R. at 262a-264a. Claimant remained off work from October 12, 2000 through August 18, 2002. *See* R.R. at 185a. On August 19, 2002, Claimant returned to work in a modified position as an operations liaison, working less than 20 hours per week. *See* R.R. at 189a. Despite ongoing medical treatment and medications, his pain increased and he again ceased working on December 17, 2002. *See* R.R. at 192a-193a. The State Workers' Insurance Fund (SWIF) was Employer's WC insurance carrier beginning October 2, 2002. *See* R.R. at 263a, 2564a.

On September 22, 2003, Claimant filed a claim petition (Claim Petition), wherein he averred that repetitive work activities rendered him disabled as of October 12, 2000. *See* R.R. at 21a. On October 1, 2003, the Department of Labor and Industry, Bureau of WC (WC Bureau) assigned the matter Claim No. 2550988. Erie

---

[4] Because LMI is in bankruptcy, the Pennsylvania Workers' Compensation Security Fund, through its third-party administrator AmeriHealth Casualty Services, Inc. is administering this claim on LMI's behalf. *See* LMI Br. at 4 n.1.

[5] "[A]n employee must demonstrate that he is disabled as a consequence of the work-related injury. The term 'disability' is synonymous with an employee's loss of earning power." *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 75 n.4 (Pa. Cmwlth. 2012) (citation omitted).

filed an answer and petition to join LMI, alleging that Claimant's 2000 injury was a recurrence of a 1994 work injury. LMI joined SWIF, alleging that Claimant sustained a new injury in December 2002, when SWIF was the liable carrier. On December 13, 2004, Claimant filed a claim petition against Erie, LMI and SWIF alleging he was entitled to disfigurement benefits due to scarring resulting from neck surgery necessitated by his 1994, 1995 and 2000 work injuries (Disfigurement Claim Petition). The insurance carriers denied the allegation. Protracted litigation ensued over the years.

On May 17, 2006, the WCJ granted the September 22, 2003 Claim Petition, concluding that Claimant established that he sustained work-related injuries to his spine, shoulders and lower extremities on December 28, 1994, February 9, 1995 and July 1, 1997, and that "his work activities over time caused him to have pain to various parts of his body resulting in a worsening [of] his underlying symptoms[] on October 12, 2000[,] and causing him an inability to perform the collator duties as of October 12, 2000" and, consequently, a disability for which Erie was responsible. WCJ 5/17/06 Dec. Finding of Fact 29, R.R. at 2283a (as modified by WCJ 9/21/10 Dec. Finding of Fact 9, R.R. at 2283a); *see also* WCJ 5/17/06 Dec. Conclusions of Law 1-2. Claimant was awarded total disability benefits payable by Erie as of October 12, 2000, with a credit for short and long-term disability benefits Erie funded, and wages Claimant received between August and December 2002. The WCJ dismissed the joinder petitions and Claimant's Disfigurement Claim Petition.[6] On appeal, on October 19, 2009, the Board remanded the May 17, 2006 decision to

---

[6] Claimant's Disfigurement Claim Petition was dismissed without prejudice because the WCJ did not observe Claimant's scarring. On May 24, 2006, the WCJ issued an amended/corrected decision after he observed Claimant's scarring, which he attributed to Claimant's October 12, 2000 injury, and for which he awarded Claimant 40 weeks of disfigurement benefits. However, on October 19, 2009, the Board vacated the May 24, 2006 amended/corrected decision as null and void.

the WCJ for clarification of Claimant's injuries, injury dates and disability because the accepted medical evidence conflicted and could not be reconciled.

On September 21, 2010, on remand, the WCJ, *inter alia*, granted the Claim Petition and the Disfigurement Claim Petition, and dismissed the joinder petitions. The WCJ specifically determined that Claimant was totally disabled due to his work injuries from October 12, 2000 to August 19, 2002, when he returned to modified work at reduced pay, thereby entitling him to partial disability benefits. In addition, the WCJ concluded that Claimant sustained a recurrence of his work injuries and became totally disabled as of December 12, 2002, for which Erie was responsible. Finally, the WCJ granted Claimant 40 weeks of disfigurement benefits. Erie appealed.

On October 24, 2011, the Board remanded the WCJ's decision on the Claim Petition for the WCJ to clarify his findings relative to Claimant's injury and disability, and which insurer is responsible therefor. On December 16, 2013, the WCJ issued a decision after remand (of the WCJ September 21, 2010 decision findings) declaring Erie the responsible insurer for Claimant's October 12, 2000 disability, thereby making Erie solely liable for Claimant's continuing WC benefits. Claimant and Erie appealed to the Board.[7]

Collaterally, the parties were involved in litigation before the Bucks County Common Pleas Court that was ultimately resolved by mediation, and the settlement thereof was memorialized in a Post-Mediation Agreement executed by Claimant, Erie and the mediator on February 13, 2012. *See* WCJ 5/9/14 Dec. Ex. D-1. In the Post-Mediation Agreement, Claimant and Erie agreed: "[Employer/Erie] shall pay to or on behalf of Claimant the sum of $750,000[.]00, in full settlement of

---

[7] The December 16, 2013 WCJ decision attached in the reproduced record (*see* R.R. at 2422a-2427a) is related to a review petition not at issue in this appeal. The December 16, 2013 WCJ decision at issue here was obtained from the certified record.

all claims asserted in the above-captioned litigation as against [Employer] and [Erie]." Post-Mediation Agt. ¶ 1. The "above-captioned litigation" was "[Claimant] v. [Employer], Bureau Claim No. 2550988," which is the WC Bureau-assigned claim number for Claimant's WC claims. Post-Mediation Agt. at 1. The Post-Mediation Agreement stated that "Claimant shall satisfy and hold [Employer/Erie] harmless for any claims for costs, disbursements, attorney's fees and liens of any type." Post-Mediation Agt. ¶ 2. The parties intended the agreement to be "<u>final</u> and <u>binding</u> upon all parties to this matter and is enforceable in a court of law of general jurisdiction." Post-Mediation Agt. ¶ 7. They further agreed that the settlement would be presented to a WCJ for approval. *See* Post-Mediation Agt. ¶ 8.

On March 16, 2012, the WCJ granted a Petition to Approve Compromise and Release Agreement By Stipulation and a two-page addendum attached thereto (Agreement), wherein Claimant, Employer and Erie declared:[8]

> 10. [Claimant] will be paid the lump sum of $500,000.00 above his [a]ttorney's fee in exchange for his right to the payment of total disability benefits, partial disability benefits, specific loss benefits, . . . and his right to penalties and interest pursuant to a myriad of past [d]ecisions and [o]rders. [Claimant's] [a]ttorney is accepting $250,000.00 as his fee[,] which covers [WC] matters as well as civil litigation in the [Bucks and Erie county common pleas courts] for which both [Claimant] and his [a]ttorney will execute and deliver a [p]raecipe to mark the respective [j]udgments as 'Settled, Discontinued and Ended with legal prejudice.'[9]

---

[8] Section 449 of the WC Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 1000.5, authorizes parties to settle WC claims after a WCJ hearing. Section 449 of the Act was added by Section 22 of the Act of June 24, 1996, P.L. 350. "It is well established that a valid [compromise and release] agreement, once approved, is final, conclusive and binding on the parties." *DePue v. Workers' Comp. Appeal Bd. (N. Paone Constr., Inc.)*, 61 A.3d 1062, 1067 (Pa. Cmwlth. 2013).

[9] According to the Agreement, the parties committed to withdraw all of the outstanding appeals and petitions, *except* the Board's October 24, 2011 decision. Specifically, the Agreement provided that Claimant "retain[ed] the right to look to any other insurance carrier which may be

Agt. ¶ 10; *see also* Agt. ¶¶ 6, 8. The Agreement also stated that Claimant would nevertheless continue receiving reasonable and necessary medical expense payments for his work injuries from the responsible insurance carrier.[10] *See* Agt. ¶¶ 1, 4, 7.

On February 18, 2014, Claimant filed the Penalty Petition, therein claiming that Employer failed to pay unreasonable contest legal fees, plus interest and medical bills as ordered in the September 21, 2010 WCJ decision. Employer responded, *inter alia*, that the Agreement settled those amounts. On May 9, 2014, the WCJ dismissed the Penalty Petition, concluding that the Agreement resolved all of the matters Claimant asserted in the Penalty Petition. Claimant appealed therefrom to the Board. The appeals from the December 16, 2013 (Appeal No. A14-0029) and May 9, 2014 (Appeal No. A14-0510) WCJ decisions were consolidated.

On April 22, 2016, the Board affirmed the December 16, 2013 WCJ determination that Erie was responsible for paying Claimant's WC benefits from October 12, 2000 to December 17, 2002, but reversed the WCJ's ruling that Erie was responsible for Claimant's benefits after December 17, 2002. Further, the Board affirmed the May 9, 2014 WCJ decision dismissing Claimant's Penalty Petition on the basis that the Agreement resolved the parties' claims. On May 20, 2016, Claimant timely appealed from the Board's April 22, 2016 order to this Court (Pa.

responsible for the payment of further compensation benefits for his said work injuries[,]" and Erie "retain[ed] the right to look to any responsible carrier for reimbursement of payments made to and on behalf of [Claimant]." Agt. ¶ 19.

[10] The Agreement specifies that "[Claimant] retains the right to the payment of reasonable medical expenses necessitated by [Claimant's] work-related injuries pursuant to the provisions of the [Act]." Agt. ¶ 14. Paragraph 1 of the Agreement specifies that the date of injury was "10/12/2000." Agt. ¶ 1. Paragraph 4 of the Agreement defines the "precise nature of the injury" as "work-related injuries to his cervical spine, thoracic spine, lumbar spine, bilateral shoulders, bilateral trapezius, bilateral lower extremities, insomnia and headaches[,] . . . a surgical scar . . . [and] certain psychological injuries . . . : [a]nxiety, major depression – single episode and chronic pain syndrome[.]" Agt. ¶ 4.

Cmwlth. No. 824 C.D. 2016).[11] Erie did not appeal from the Board's April 22, 2016 order.

On May 25, 2016, Erie filed a rehearing petition relative to the appeals from the December 16, 2013 (Appeal No. A14-0029) and May 9, 2014 (Appeal No. A14-0510) WCJ decisions, arguing that there is no evidence to support the WCJ's finding that Claimant's condition worsened or that Claimant suffered a new injury during the time Erie was the responsible insurance carrier. On June 3, 2016, the Board denied Erie's rehearing petition. On June 17, 2016, Erie filed the Rehearing Petition. On August 22, 2016, the Board denied Erie's June 17, 2016 Rehearing Petition. On September 6, 2016, Erie appealed from the Board's order to this Court (Pa. Cmwlth. No. 1467 C.D. 2016).

On July 17, 2018, Claimant and Erie filed a joint motion to stay this appeal pending a July 19, 2018 hearing on and approval of a compromise and release (C&R) they reached in settlement of the issues between them. SWIF opposed the motion for stay. On July 18, 2018, this Court granted a stay and ordered the parties to file a status report by August 22, 2018.

On August 22, 2018, Claimant, Employer, Erie, SWIF and LMI (by the Pennsylvania Workers' Compensation Security Fund) filed a joint Statement of the Parties as to Possible Remaining Issues (Joint Statement), wherein they represented: "[A] [C&R] on August 9, 2018 has resolved many, if not all, of the issues . . . in the Petitions for Review captioned above[.]" Joint Statement at 1; "[Claimant] and [Erie]

---

[11] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

On November 4, 2016, this Court denied Employer's motion to quash Erie's petition for review, and clarified that Erie's sole issue on appeal is whether the Board erred in its August 22, 2016 decision by denying Erie's Rehearing Petition.

By November 9, 2016 order, this Court consolidated Claimant's and Erie's appeals, designating Claimant the petitioner and Erie the respondent.

have resolved all issues between them[] and[,] to the extent that there are issues between [them] in the pending appeal, they are moot. [Erie] is withdrawing its [a]ppeal at [No.] 1467 C.D. 2016."[12] Joint Statement ¶ 1; Claimant now asserts "that [SWIF] is responsible for indemnity payments for the 2002 aggravation of [Claimant's] initial work injury[,]" and/or that the matter should be remanded for clarification because the Board's April 22, 2016 decision was contradictory. Joint Statement ¶ 2; SWIF counters that the issue was not preserved, as Claimant neither raised nor developed it in the petition for review or in his appeal brief and, thus, it is waived. *See* Joint Statement ¶ 3; SWIF also asserts that internal contradiction is not an independent basis for review or remand. *See* Joint Statement ¶ 4; SWIF further claims that the WCJ and the Board properly determined that Claimant's December 17, 2002 disability was a recurrence of his October 12, 2000 work injury. *See* Joint Statement ¶ 5; Employer concurs with SWIF's position. *See* Joint Statement ¶ 6; "[LMI] will be dismissed from this matter[.]"[13] Joint Statement ¶ 7.[14] Neither the C&R nor an August 9, 2018 order approving it have been provided to this Court. Because there is no conclusive record before this Court that a settlement has been reached, we will review the merits of these appeals.

---

[12] On August 23, 2018, counsel for Employer/Erie filed a Praecipe to Discontinue and End, which, in accordance with Pennsylvania Rule of Appellate Procedure 1973, this Court will treat as an Application to Discontinue. Therein, Erie asked the clerk of this Court to "mark all [a]ppeals of [Employer], [Erie], in the captioned case as DISCONTINUED and ENDED, with prejudice." Application to Discontinue at 1. Although the "captioned case" referred to contains the captions of *both* appeals, only the appeal filed at No. 1467 C.D. 2016 was an appeal "of [Erie]." *Id.* Accordingly, this Court deems the Application to Discontinue applicable to discontinue and end only that appeal.

[13] On September 26, 2018, Claimant filed a Motion to Dismiss LMI from this action with prejudice, "as [Claimant] did not raise any issues in his [p]etition for [r]eview against LMI . . . to be decided by this Court." Motion to Dismiss at 1. The Claimant's Motion to Dismiss was not opposed.

[14] Notably, it is clear on the face of the Joint Statement that it is neither a party stipulation or a pleading, but rather is merely a statement of "possible remaining issues." Joint Statement at 1.

9

**Claimant's Appeal from the Board's April 22, 2016 order
(Claimant's Claim and Penalty Petitions)**

**Claim Petition** (December 16, 2013 WCJ decision - Appeal No. A14-0029)

As a threshold matter, this Court will address Employer's claim that since Claimant has no legal interest in whether his WC benefits are paid by Erie or another insurance carrier, he was not aggrieved by the Board's April 22, 2016 order and, thus, Claimant lacks standing to appeal therefrom.[15] *See* Employer Br. at 11-15.

> Pursuant to Section 702 of the Administrative Agency Law (Law), 2 Pa.C.S. § 702, any person 'aggrieved' by a Commonwealth agency adjudication who has a 'direct interest' in the adjudication shall have the right to appeal to a court vested with jurisdiction to hear such appeals. *See also* Pa.R.A.P. 501 (providing 'any party aggrieved by an appealable order . . . may appeal therefrom'). 'A 'direct' interest requires a showing that the matter complained of caused harm to the party's interest.' *S. Whitehall Twp. Police Serv. v. S. Whitehall Twp., . . .* 555 A.2d 793, 795 ([Pa.] 1989). Whether a party has standing to appeal is determined on a case-by-case basis and, if a person is determined aggrieved, she has standing. *Robb v. Workers' Comp. Appeal Bd. (Dep't of Pub. Welfare),* 718 A.2d 875 (Pa. Cmwlth. 1998).

*Hill v. Dep't of Corr.*, 64 A.3d 1159, 1164 (Pa. Cmwlth. 2013).

Here, Claimant had a direct interest in the Board's ruling that "[t]he WCJ's findings lead to the conclusion that Claimant's disability stems from the injuries he sustained in the 1990s and[,] more specifically, the initial event in 1994," when LMI was the liable insurance carrier, Board 4/22/16 Op. at 23, but "it is undisputed that Claimant did not file a timely claim for a 1994 injury."[16] *Id.* at 24.

---

[15] Employer filed a motion to quash Claimant's appeal to the Board on the same grounds. The Board denied the motion to quash, stating: "[A]s a general party in interest, we do not agree[.]" Board 4/22/16 Op. at 7.

[16] Although the Board recognized in its April 22, 2016 opinion that Claimant's December 17, 2002 injury was a recurrence, contrary to the WCJ's credibility determinations upon which he

10

Therefore, despite the Board's agreement with the WCJ that Claimant's December 17, 2002 injury was a recurrence, the Board's April 22, 2016 opinion called into question whether the benefits Erie has paid and ultimately settled were ever Erie's responsibility; hence, Erie's attempt to argue on appeal that it was not responsible for payment of Claimant's WC benefits from October 12, 2000 to August 18, 2002 in the first instance.[17] *See* Erie Br. at 10. Under circumstances in which the Board's April 22, 2016 holding harmed Claimant's interests, Claimant was aggrieved and, therefore, had standing to appeal.

Claimant argues that the Board exceeded its appellate authority by unilaterally interpreting and reversing the WCJ's September 21, 2010 factual findings, as incorporated by reference in the WCJ's December 16, 2013 decision (*see* WCJ 12/16/13 Dec. Finding of Fact 4), and ruling that there was no evidence to support the finding that the October 12, 2000 disability recurred in December 2002 and, thus, Erie continued to be responsible for Claimant's benefits.

Initially,

> [a]n injured employee seeking to obtain [WC] benefits for a work-related injury bears the burden of proving all elements necessary to support an award. Pursuant to Section 301(c)(1) of the [WC] Act [(Act)], 77 P.S. § 411(1), an employee's injuries are compensable if they (1) arise in the course of employment and (2) are causally related thereto.

---

made his findings, the Board nevertheless related the recurrence back to Claimant's 1994, 1995 and 1997 work accidents, rather than the accepted October 12, 2000 work injury at issue.

[17] Erie's arguments in its brief to this Court that the Board erred in its April 22, 2016 opinion by ruling that Erie is liable for Claimant's benefits after October 12, 2000, *see* Erie Br. at 6-10, 13-14, are waived. *Sw. Health Sys./Westmoreland Home Health v. Workmen's Comp. Appeal Bd. (Peterson)*, 630 A.2d 964, 967 n.4 (Pa. Cmwlth. 1993) ("[Erie] failed to properly preserve this issue by not appealing from the Board's decision. Therefore, this issue has been waived. . . . [A] party cannot use another party's appeal as a conduit to raise [its] own issue."). Moreover, since, in the 2012 Agreement, Erie clearly accepted responsibility for Claimant's benefits from October 12, 2000 through December 17, 2002, its arguments now to the contrary are also moot. *See* Agt. ¶¶ 19-20.

11

*Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 75 n.4 (Pa. Cmwlth. 2012) (citation omitted).

> It is well settled that **whether a disability results from an aggravation of a pre-existing condition or a recurrence of a prior injury is a question of fact <u>to be determined by the WCJ</u>**. *Reliable Foods, Inc. v. [Workmen's Comp. Appeal Bd.] (Horrocks)*, 660 A.2d 162, 166 (Pa. Cmwlth. 1995). Moreover:
>
> > [i]f the current disability is an 'aggravation' of the prior injury, there has been a new injury. Under these circumstances the carrier [that] was insuring an employer when the aggravation occurred is the responsible carrier. On the other hand[,] **if the disability is a recurrence of disability as a result of a prior injury, then the carrier [that] was insuring at the time of the original injury is responsible**.
>
> *Lackawanna Refuse v. [Workmen's Comp. Appeal Bd. (Christiano)]*, . . . 459 A.2d 899, 899-900 ([Pa. Cmwlth.] 1983) (citations omitted). Accordingly, **our task is to examine the record to determine whether it contains substantial evidence to support the WCJ's finding that [the c]laimant suffered a recurrence of disability resulting from a prior injury**.

*ITT-Hartford Ins. Grp. v. Workmen's Comp. Appeal Bd. (Atl. Mut. Ins. Co.)*, 688 A.2d 247, 249-50 (Pa. Cmwlth. 1997) (bold and underline emphasis added).

The law is well-settled that "[t]he WCJ has exclusive authority to act as fact finder, determine credibility of witnesses, and weigh the evidence. The WCJ's findings will not be disturbed if they are supported by substantial, competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014) (citation omitted). "'Substantial evidence' is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Washington v. Workers' Comp. Appeal Bd. (State Police)*, 11 A.3d 48, 54 n.4 (Pa. Cmwlth. 2011). Further,

12

'[i]n performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the fact[]finder.' [*Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003)]. 'Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the fact[]finder's decision in favor of that prevailing party.' *Id.* It does not matter if there is evidence in the record supporting findings contrary to those made by the WCJ; the pertinent inquiry is whether the evidence supports the WCJ's findings. *Id.*

*3D Trucking Co., Inc. v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007).

In the instant matter, Finding of Fact 9 of the WCJ's December 16, 2013 decision, which modified, upon remand, Finding of Fact 14 in the WCJ's September 21, 2010 decision, declared:

a) [Claimant,] due to the October 12, 2000 injury became temporar[il]y totally disabled on October 12, 2000 with [Employer] having [n]otice on October 12, 2000.

b) [Claimant,] due to the October 12, 2000 work injury[,] remained temporarily totally disabled from October 12, 2000 through August 18, 2002. [Claimant] on August 19, 2002 returned to work with restrictions required by the October 12, 2000 injury; returning to modified[-]duty work different from his pre-injury position, at wages less than his time of injury wages. [Claimant] performed the modified[-]duty work while continuing to experience symptoms from the October 12, 2000 work injury until December 17, 2002[,] at which time[,] **due to increased ongoing symptoms of pain, he experienced a recurrence of the October 12, 2000 injury resulting in Claimant again becoming temporarily totally disabled ongoing**. [Employer] had timely notice of the recurrence of the October 12, 2[]000 injury.

c) The intervening work activities [Claimant] returned to [from] August 19, 2002 until December 17, 2002 did not materially contribute to Claimant's disability[,] as the

13

pain was at the same location and he had not recovered from the October 12, 2000 injury and he was on a trial return to work [with] modified duties. **The medical opinion as a whole support**[s] **a recurrence versus an aggravation**.

WCJ's 12/16/13 Dec. at 5-6 (emphasis added).

Conclusions of Law 2, 3 and 4 from the WCJ's September 21, 2010 decision stated:

2[.] [Claimant] has met his burden [of proving that] he was injured in the course of employment and related thereto, while employed by [Employer]. [Claimant] gave notice of the injury on October 12, 2000. [Claimant] over time, while performing his work duties, experienced pain to his neck, lumbar and thoracic spine, upper back, shoulders, legs, and head. The pain worsened causing [Claimant] to suffer new injuries in the nature of an aggravation to his cervical spine, thoracic spine, lumbar spin, bilateral shoulders, bilateral trapezius, bilateral lower extremities, insomnia, and headaches. [Employer] had timely notice of the injury on October 12, 2000. [Claimant's] average weekly wage is calculated as follows ($18.50/hr. * 40 hours per week) = average weekly wage of $740.00.

3[.] [Claimant,] due to the October 12, 2000 injury[,] became temporar[il]y totally disabled October 12, 2000 with the Employer having notice on October 12, 2000. [Claimant,] due to the October 12, 2000 injury, remained temporar[il]y totally disabled until August 19, 2002[,] at which time he returned to work with restrictions from the October 12, 2000 injury returning to modified work other than his time of injury position, at wages less than his time of injury wages. [Claimant] performed the modified[-]duty work, with ongoing symptoms from the October 12, 2000 injury, until approximately December 17, 2002, at which time **due to increased ongoing symptoms of pain, caused by his modified work duties, the October 12, 2000 injury recurred**[,] **resulting in** [**Claimant**] **becoming temporar**[il]**y totally disabled ongoing**. [Employer] had timely notice of the **recurrence** of the October 12, 2000 injury.

14

> 4[.] [Employer] is liable for payment of temporary total disability from October 12, 2000 through August 18, 2002 payable at the weekly rate of $493.33 payable directly to [Claimant]. [Employer] is assessed a 50% penalty on all deferred and unpaid compensation payable directly to [Claimant].

WCJ 9/21/10 Dec. at 29-30 (emphasis added).

> On appeal, the Board declared in its April 22, 2016 decision:

> The WCJ concluded, primarily based on the testimony of [William O'Brien, III, D.O. (Dr. O'Brien)] and [Perry Black, M.D. (Dr. Black)], that on December 17, 2002, 'due to increased ongoing symptoms of pain caused by his modified work duties, the October 12, 2000 injury recurred' and that intervening work activities did not materially contribute to Claimant's renewed disability. **The WCJ interpreted both doctors**, despite their use of the term aggravation, **as establishing that Claimant sustained a legal recurrence in December[] 2002. We accept that interpretation of the medical evidence as reasonable** given the reasons the WCJ provided, and we appreciate that an examination of substance over form should be taken.[18] Dr. O'Brien did acknowledge that **there was no new injury between August[] 2002 and December[] 2002** and that MRIs between 2000 and 2003 did not change, and he testified that Claimant was unable to do the operations liaison position because of his underlying condition. Dr. Black also acknowledged that no anatomical change was shown on the MRIs and that there was not a new injury in 2002. He did indicate that **the duties of the operations liaison job caused Claimant to have a recurrence in pain which began with Claimant's 1994 injury**. It is the province of the WCJ to make a finding as to causation leading to the conclusion of whether the claimant sustained

---

[18] One problem with cases such as this is that the terms 'recurrence of a prior injury' and 'aggravation of a pre-existing condition' are legal terms of art and not medical terms. The final determination, therefore, is not based upon specific words used by the doctor, but rather upon a careful review of the medical testimony to determine its substance rather than its form.

*Reliable Foods*, 660 A.2d at 166-67.

an aggravation or recurrence. *Zurn Indus. v.* [*Workers' Comp. Appeal Bd.*] *(Bottoni)*, 755 A.2d 108 (Pa. Cmwlth. 2000)[.]

We are, however, still faced with the question of whether the WCJ's findings that the October[] 2000 injury recurred in December[] 2002 is supported by substantial evidence. **Our reading of the testimony accepted by the WCJ leads to a different conclusion**. Dr. O'Brien indicated that Claimant had an underlying cervical condition caused by the incidents in 1994, 1995 and 1997. He testified that Claimant was taken out of work in 2000 because his already[-]existing underlying condition was exacerbated by the type of work he was doing, and that **Claimant was removed from work in 2002 because the work he did as an operations liaison exacerbated his underlying cervical condition.** Similarly, Dr. Black testified that the 1994 injury was an initiating critical event which precipitated Claimant's symptoms. He stated that the injuries in 1995 and 1997 further exacerbated symptoms in Claimant's neck and upper extremities, resulting in disability in 2000, and that Claimant had a reappearance of symptoms in 2002. Also, as the WCJ recognized, [Leonard Brody, M.D. (Dr. Brody)] indicated that events in the 1990s precipitated Claimant's pain that was continuous over the next decade. Aggravation is a term of art denoting a new injury, as opposed to the resumption or manifestation of symptoms from a past injury. *Zurn Indus.* As the WCJ found, the credited testimony can support a finding that Claimant's work environment in 2002 caused a manifestation of symptoms from a previous injury rather than causing a new injury or additional injury each day he worked. *Id.* However, contrary to the WCJ's determination, the accepted testimony establishes that in 2002, Claimant sustained a recurrence of pain from his underlying conditions. **The WCJ's findings lead to the conclusion that Claimant's disability stems from the injuries he sustained in the 1990s and**[,] **more specifically, the initial event in 1994.**

**We therefore reverse the WCJ's determination that Erie is the responsible carrier as of December**[] **2002**. We point out that our determination pertains only to the WCJ's immediate [d]ecision seeking to impose liability on Erie as the carrier on the risk for a recurrence of a 2000 injury as of

2002 and in no way should be read to have any bearing on Erie's responsibilities pursuant to the terms of its binding [Agreement] with Claimant. Because **we are affirming the WCJ's determination of a recurrence in 2002**, SWIF, the carrier on the risk as of December[] 2002, is not responsible for a new or aggravation injury. As to [LMI], who appears to have been the carrier on the risk as of 1994, it is undisputed that Claimant did not file a timely claim for a 1994 injury.

Board 4/22/16 Op. at 21-24 (emphasis added; footnotes omitted).

Although there is a protracted, detailed procedural history of Claimant's ongoing WC claim, provided piecemeal by numerous incorporated WCJ and Board decisions for nearly two decades, the parties agree to the underlying facts: (1) Claimant was injured at work in 1994, 1995 and 1997, but he continued to work; (2) the repetitive, cumulative nature of Claimant's job caused his symptoms to worsen to the point that he could no longer work and was totally disabled as of October 12, 2000 (*i.e.*, October 12, 2000 injury); (3) Erie was Employer's insurer on October 12, 2000; (4) Claimant returned to work in a modified capacity from August 19, 2002 until December 17, 2002, during which time Erie paid him partial disability benefits; (5) Claimant ceased working on December 17, 2002 and was, once again, totally disabled; and (6) in March 2012 (between the WCJ's September 21, 2010 decision and his December 16, 2013 decision under review), Claimant and Erie executed the Agreement, which the WCJ approved, settling all claims concerning the WC Bureau-assigned claim number for Claimant's WC claims, except Claimant could look to other insurance carriers for Claimant's WC benefits and Erie could look to other carriers for reimbursement of payments made to and on behalf of Claimant.

Although the Board agreed with the WCJ that Claimant suffered a recurrence in December 2002, the Board determined that the evidence the WCJ relied upon supports the conclusion that Claimant's December 2002 disability is a recurrence of his 1994, 1995 and 1997 work injuries (when LMI was Employer's WC

17

carrier), rather than Claimant's October 12, 2000 injury. After a thorough review of the record evidence and applicable law, this Court agrees that substantial evidence supports the WCJ's conclusion that Claimant suffered a recurrence of a prior injury, but the applicable prior injury was the October 12, 2000 injury, which Erie accepted, not Claimant's 1994, 1995 and 1997 work injuries.

As stated above, "whether a disability results from . . . recurrence of a prior injury is a question of fact **to be determined by the WCJ**." *ITT-Hartford Ins. Grp.*, 688 A.2d at 249 (emphasis added). Moreover, this Court has ruled that "**an injury without disability is not compensable** except in instances where a claimant has suffered a non-disabling specific loss injury as defined by Section 306(c) of [t]he [Act]*, 77 P.S. § 513." *Refiners Transp. & Terminal v. Workmen's Comp. Appeal Bd. (Harris)*, 632 A.2d 979, 984 (Pa. Cmwlth. 1993) (emphasis added); *see also Pollard v. Workmen's Comp. Appeal Bd. (N. Strabane Twp.)*, 570 A.2d 143 (Pa. Cmwlth. 1990). Therefore, "[**a**] **claimant could not have suffered a recurrence of a prior injury so as to render a prior insurer liable, when the claimant never received benefits for a prior injury, and there was thus no determination of a disability which could recur**." *Refiners Transp.*, 632 A.2d at 985 (emphasis added).

In the instant matter, "[s]ince [**C**]**laimant's** injury is not a specific loss, his **injury became compensable on the date when he became disabled,** [**October 12, 2000**]." *Refiners Transp.*, 632 A.2d at 984 (emphasis added). There is no dispute that pursuant to the 2012 Agreement, Erie accepted and the WCJ approved Claimant's date of injury and disability as October 12, 2000. The Board accepted that conclusion, but as to "whether the WCJ's finding that the October, 2000 injury recurred in December, 2002 [was] supported by substantial evidence[,]" the Board concluded: "Our reading of the testimony accepted by the WCJ leads to a different conclusion." Board 4/22/16 Op. at 22.

18

However, the WCJ's December 16, 2013 decision finding Erie liable was based nearly entirely on his credibility determinations. At the Board's direction on remand, the WCJ summarized and explained the testimony of each medical witness and, based thereon, concluded that Dr. Black's and Dr. O'Brien's testimony was competent and accepted as credible, and rejected as not credible Dr. Brody's and neurosurgeon Stephen L. Fedder, M.D.'s (Dr. Fedder)[19] testimony when in conflict with Claimant's, Dr. Black's and/or Dr. O'Brien's testimony.[20] *See* WCJ 12/16/13

---

[19] Dr. Fedder examined Claimant on March 2, 2004 at Employer's request.

[20] The WCJ found in Finding of Fact 8:

> b) Dr. Black's testimony is found to be competent and is accepted as credible. [It] is supported by the credible history of pain, its onset, and nature related by [Claimant], his physical examinations of [Claimant], his review of the medical records and diagnostic studies, his observations during surgery, and his training and experience as a physician, as well as his role as Claimant's treating neurosurgeon.
>
> c) . . . Dr. Black's testimony establishes that Claimant experienced a legal recurrence of his pre-existing work injury in December 2002 . . . . The finding is supported by Dr. Black's testimony that, in his opinion[,] aggravation and recurrence are the same thing; his testimony that MRIs taken yearly from 2000 to 2003 showed no structural changes as a result of [Claimant's] return to modified-duty work, his testimony that there was no new injury in 2002, and the lack of testimony that [Claimant's] symptoms were related to a new injury in 2002.
>
> d) Dr. O'Brien's testimony is found to be competent and is accepted as credible. [It] is supported by the credible history of pain, its onset, nature and location, his observations of [Claimant] by physical examination over time, his understanding of [Claimant's] work activities, his review of medical records and reports of diagnostic studies, his training and experience as a physician, and his role as [Claimant's] treating physician beginning in February 2003.
>
> e) . . . Dr. O'Brien's testimony establishes that Claimant experienced a legal recurrence of his pre-existing work injury in December 2002 . . . . This finding is suppored by Dr. O'Brien's testimony that MRIs taken yearly from 2000 to 2003 showed no structural changes as a result of Claimant's return to modified-duty work, his testimony that [Claimant's] pain continued to increase from the time he left work in

19

Dec. at 4-5. Notwithstanding the Board's claim that it reviewed "the testimony accepted by the WCJ," Board 4/22/16 Op. at 22, the Board summarized *all* of Dr. Brody's testimony. *See* Board 4/22/16 Op. at 16-17. Moreover, despite the Board's agreement that, "as the WCJ recognized, Dr. Brody indicated that events in the 1990s precipitated Claimant's pain that was continuous over the next decade," it nevertheless interpreted the testimony to reach "a different conclusion" on appeal. Board 4/22/16 Op. at 22.

---

2000 until he returned to the modified-duty position in August 2001 [sic], his testimony that [Claimant] could not perform his modified-duty job due to an underlying cervical condition, his testimony that [Claimant] had needed surgery since 2000, and specifically, his testimony that as of 2000 the damage was already done and it was just [Claimant's] perception of the pain that was changing.

f) Dr. Brody's testimony is rejected as not credible when conflicting and disagreeing with the testimony of [Claimant], Dr. Black, or Dr. O'Brien. Dr. Black in his role as [Claimant's] treating neurosurgeon, and Dr. O'Brien in his role as [Claimant's] current treating physician, are in a better position to evaluate [Claimant's] disability and its casual [sic] relationship to his work activities versus Dr. Brody's one[-]time evaluation of [Claimant] for the purposes of this litigation.

g) . . . Dr. Brody's testimony is in agreement with the testimony of Dr. Black and Dr. O'Brien that no new injury occurred in December of 2002. This finding is supported by Dr. Brody's testimony that there was no new injury in December of 2002; his testimony that traumatic events much earlier than 2002 precipitated pain that was continuous and progressive over the subsequent decade; his testimony that [Claimant] reported to him that there had been no new episode in 2002 but just that this pain continued to get worse.

h) Dr. Fedder's testimony is rejected as not credible. It is particularly rejected as not credible when his testimony conflicts and disagrees with the testimony of [Claimant], Dr. Black, or Dr. O'Brien. Dr. Black in his role as [Claimant's] treating neurosurgeon, and Dr. O'Brien in his role as Claimant's current treating physician are in a better position to evaluate [Claimant's] disability and its casual [sic] relationship to his work activities versus Dr. Fedder's one[-]time evaluation of [Claimant] for the purposes of this litigation.

WCJ 12/13/16 Dec. at 4-5.

"The Board may review the nature of the evidence submitted to determine if it is sufficient to state a claim, however reinterpretation of the evidence by the Board is in excess of its scope of review." *Bartholetti v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 927 A.2d 743, 747 (Pa. Cmwlth. 2007). Because the Board reinterpreted the evidence and, in essence, disregarded the WCJ's credibility determinations upon which those findings were made, it exceeded its appellate authority in this case in reversing the WCJ's determinations[21] that Claimant suffered a December 17, 2002 recurrence of his October 12, 2000 work injury and that Erie was liable for WC benefits for Claimant's work injuries after December 17, 2002.

Notwithstanding, the Board properly declared: "[T]he [Agreement] . . . is binding and Erie is liable to Claimant for an October 12, 2000 injury date in accordance with the terms of the [Agreement] and its attachments." Board 4/22/16 Op. at 21; *see also* Agt. ¶ 1 (the specified injury date was 10/12/2000). The Board further clarified that its "determination pertain[ed] only to the WCJ's immediate [d]ecision seeking to impose liability on Erie . . . for a recurrence of a 2000 injury as of 2002 and in no way should be read to have any bearing on Erie's responsibilities pursuant to the terms of its binding [Agreement] . . . ." Board 4/22/16 Op. at 23. Notably, however, the WCJ's December 16, 2013 decision is essentially the same as his September 21, 2010 decision, wherein the WCJ similarly concluded that Claimant's December 2002 disability was a recurrence of his October 12, 2000 work injury. *See* WCJ 9/21/10 Dec. at 30; *see also* WCJ 12/16/13 Dec. at 7.

Based on this Court's review, the Agreement settled any and all claims Claimant had and/or will have against Erie related to the October 12, 2000 injury,

---

[21] *See* WCJ 12/16/13 Dec. Finding of Fact 4, wherein the WCJ's September 21, 2010 factual findings were incorporated by reference in the WCJ's December 16, 2013 decision, including the above-quoted Finding of Fact 8.

including those arising as of December 17, 2002 and continuing thereafter. The Agreement specifically acknowledged the pending remand under the Board's October 24, 2011 order regarding the carrier responsible for Claimant's WC benefits as of December 17, 2002, expressly authorized Claimant not to withdraw his petitions and appeals related thereto so he could look to other insurance carriers that may be responsible for Claimant's work injuries, and provided that Erie retained the right to look to other carriers that may be responsible for payment. *See* Agt. ¶ 19; *see also* Agt. ¶ 20; WCJ 5/9/14 Dec.

In the WCJ's May 9, 2014 decision, when reviewing the Agreement's effect on Claimant's Penalty Petition, the WCJ found, in pertinent part:

> The parties intended to resolve all pending litigation. The parties intended this resolution to include Claimant's future indemnity benefits . . . . In rendering this finding, this [WCJ] notes the following to be significant:
>
> . . . .
>
>> e. Claimant argues that the matters awarded under [the September 21, 2010 WCJ decision] survived the settlement because [P]aragraph []19 created an exception in the [Agreement]. However, . . . what survived were possible claims against other insurance companies, the joined defendants whom [the September 21, 2010 WCJ decision] previously dismissed. . . . The parties attempted to design the settlement to allow further litigation on these past claims against other insurance carriers, but not Erie.

WCJ 5/9/14 Dec. at 4-5. In its April 22, 2016 opinion, the Board agreed that the language in paragraph 19 of the Agreement expressly excepting the WCJ's remanded September 21, 2010 decision from those appeals to be withdrawn thereunder, did not include claims against Erie, but rather possible claims against other insurance companies. *See* Board 4/22/16 Op. at 31.

22

Although paragraphs 19 and 20 of the Agreement appear to make SWIF responsible for Claimant's WC payments after December 17, 2002, the Board clarified in its April 22, 2016 opinion:

> In the [Agreement], Claimant and Erie . . . agreed that Claimant sustained a new injury upon his return to work in 2002 that required SWIF to be responsible for continuing payment of benefits as of December, 2002. In our Opinion at A12-0567 [(disposing of SWIF's appeal of the WCJ's March 16, 2012 decision granting the Agreement)], we pointed out that Claimant and Erie acknowledged that the language they used did not compel SWIF to pay. We stated that SWIF was not ordered to pay benefits in the context of approval of the [Agreement], nor did [the WCJ] render a determination on SWIF's liability, if any. We agreed with Erie and Claimant that the [Agreement's] provisions were not enforceable against SWIF, [which] was, everyone agreed, not a party to the [Agreement].[22]

Board 4/22/16 Op. at 21 n.16. This Court likewise concludes that the Agreement's language is clear and means that, no matter what the WCJ decided on remand thereafter, any indemnity claims against Erie had been fully and conclusively settled.

Under circumstances in which the substantial evidence supports that Claimant and Erie executed the 2012 Agreement after the September 21, 2010 WCJ conclusion that Claimant's December 17, 2002 disability was a recurrence of his accepted October 12, 2000 injury, *see* WCJ 9/21/10 Dec. at 30, and the WCJ reached a virtually identical conclusion on December 16, 2013, *see* WCJ 12/16/13 Dec. at 7, this Court rules that the Agreement settled Erie's liability for Claimant's indemnity benefits after December 17, 2002.[23]   However, pursuant to the Agreement, Erie

---

[22] It is a "general principle of contract law that an agreement cannot legally bind persons who are not parties to the contract." *Chambers Dev. Co., Inc. v. Commonwealth, ex rel. Allegheny Cty. Health Dep't*, 474 A.2d 728, 731 (Pa. Cmwlth. 1984).

[23] Claimant's designation in the Joint Statement that his 2002 disability was the result of an "aggravation" (so he can seek WC indemnity benefits from SWIF) has no legal effect and is not binding on this Court. Joint Statement ¶ 2. It is also disingenuous.

remains liable for Claimant's reasonable and necessary medical expenses arising from his October 12, 2000 work injury.

---

According to the record, the WCJ dismissed SWIF from the action on December 16, 2013 because it "was not the insurer on the risk for [] Claimant's injury[.]" WCJ 12/16/13 Dec. at 8. Thereafter, the Board likewise declared "SWIF . . . is not responsible . . . ." Board 4/22/16 Dec. at 24. In his petition for review to this Court, Claimant avers that he will suffer irreversable harm and prejudice because he "may be deprived of [the right to] seek[] legal relief from [SWIF]." Petition for Review ¶ 9. However, in Claimant's "Statement of Legal Questions Presented," he objected to the Board's reversal of the WCJ's determination that Erie was liable for his December 17, 2002 recurrence. *See* Claimant Br. at 5. Thereafter in his brief, Claimant acknowledged: "The WCJ did not commit error in finding that the disability effective December 17, 2002 was a recurrence of the injuries of October 12, 2000." Claimant Br. at 42. Claimant further declared: "[N]otwithstanding that [Employer] had changed or replaced its [WC] carrier [to SWIF] in 2002 and before December 17, 2002[,] under well[-]established decisional law, [Erie] was still responsible for [C]laimant's recurrence[.]" Claimant Br. at 45. He also stated: "[Erie] must be determined to be legally responsible for [the December 17, 2002] work-related disability." Claimant Br. at 50; *see also* Claimant Br. at 29-66. Accordingly, only after it was clear (and/or Claimant and Erie agreed) that Claimant was not entitled to indemnity benefits beyond what Erie has already paid, did Claimant assert that his December 17, 2002 disability was an aggravation for which SWIF is liable.

Moreover, even if this Court's ruling herein did not render Claimant's purported claim against SWIF moot, because Claimant did not raise this issue in the "Statement of Legal Questions Presented" or "Arguments" portions of his brief, any allegation of error in this regard has been waived for purposes of this appeal. *See Riley v. Workers' Comp. Appeal Bd. (DPW/Norristown State Hosp.)*, 997 A.2d 382, 390 n.14 (Pa. Cmwlth. 2010) ("Issues must be raised in a party's petition for review as well as the Statement of Questions Involved and argument sections of one's brief. Otherwise, they may be deemed waived."); *see also* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); *see also G.M. v. Dep't of Pub. Welfare*, 954 A.2d 91, 93 (Pa. Cmwlth. 2008) ("[B]ecause [the p]etitioner failed to include th[e] issue in the Statement of Questions Involved portion of his brief, this issue is waived."); Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); *Pa. State Univ. v. Workers' Comp. Appeal Bd. (Sox)*, 83 A.3d 1081, 1088 n.12 (Pa. Cmwlth. 2013) (Despite that "[the petitioner] include[d] in [his] petition for review a challenge to the Board's conclusion that the [] injury was [a recurrence] rather than a [new injury,]" the petitioner nevertheless waived it because he "fail[ed] to properly develop th[e] issue in [his] brief[.]").

Because Claimant failed to raise the purportedly contradictory nature of the Board's April 22, 2016 order in his petition for review, and his "Statement of Legal Questions Presented" and "Arguments," that issue is likewise waived. *Riley*.

24

**Penalty Petition** (May 9, 2014 WCJ Decision - Appeal No. A14-0510)

Claimant also challenges that portion of the Board's April 22, 2016 decision affirming the WCJ's May 9, 2014 dismissal of his Penalty Petition. Claimant specifically argues that the Board erred by affirming the WCJ's dismissal of his Penalty Petition based upon the Agreement, where the medical care providers, Dr. Black and Hahnemann Hospital were not parties thereto, and the Agreement did not address attorney's fees. Claimant further contends that the Board's April 22, 2016 decision was not a reasoned decision.

Initially, Section 435(d) of the Act states, in relevant part: "The . . . [B]oard . . . shall have the power to impose penalties as provided herein for violations of the provisions of this [A]ct or such rules and regulations or rules of procedure[.]" 77 P.S. § 991(d).[24]  "[A] claimant who files a penalty petition bears the burden of proving a violation of the Act occurred.   If the claimant meets his or her initial burden of proving a violation, the burden then shifts to the employer to prove it did not violate the Act." *Gumm v. Workers' Comp. Appeal Bd. (Steel)*, 942 A.2d 222, 232 (Pa. Cmwlth. 2008) (citation omitted).

The Agreement incorporated a list of benefits and costs contemplated in the settlement, including, *inter alia*, past medical expenses owed to Dr. Black and Hahnemann Hospital, penalty awards, and costs and attorney's fees for enforcement. *See* R.R. at 2563a-2566a. On March 16, 2012, the WCJ approved the Agreement after a hearing, finding that "Claimant understands the full legal significance of the Agreement and voluntarily entered into [it]." WCJ 3/16/12 Dec. at 1. Claimant did not appeal from the WCJ's March 16, 2012 decision.

---

[24] Added by Section 3 of the Act of February 8, 1972, P.L. 25.

Relative to the Agreement's effect on Claimant's Penalty Petition, the WCJ found:

> [A]ll matters which Claimant asserts remain due and owing under the [September 21, 2010 WCJ decision] and which form the basis for this Penalty Petition had been resolved through the [Agreement]. The parties intended to resolve all pending litigation. The parties intended this resolution to include Claimant's future indemnity benefits and also to encompass all outstanding past disputes including the medical bills, attorney['s] fees and interest. In rendering this finding, this [WCJ] notes the following to be significant:
>
> > a. The extent of the [Agreement] is broad and there is no language in the [Agreement] which preserved any claim for past benefits against Erie. Paragraph []10 [of the Agreement] states that the settlement was for all wage loss, death benefits, specific loss benefits, penalties and interest 'pursuant to a myriad of past Decisions and Orders'. In addition to showing the brea[d]th of the settlement, this [WCJ] finds that the reference to the 'myriad of past Decisions and Orders' shows an intention to encompass past matters, including from the [September 21, 2010 WCJ decision] which forms the basis of the current Penalty Petition.
> >
> > b. Concerning medical expenses, Paragraph[s] []7 and 14(a) [of the Agreement] establish that the Claimant retained the right to the payment of future medical expenses. However, the [Agreement] shows that the parties intended to resolve the past medical expenses. This intent is evident in the Employer's obligation to pay a medical lien presented by AmeriHealth of $27,373.78 and also to pay Claimant $9,484.55 for his past out-of-pocket medical bills (Paragraph []18 of the [Agreement]). Moreover, paragraph []5 of the [Agreement] attached and incorporated into the [Agreement] a two[-]page checklist of claims that were pending at the time of the mediation and used as a guide to reach the settlement. Specifically included in that checklist are the bills for Dr. Black and Hahnemann

26

Hospital which are now being raised by Claimant in this Penalty Petition. Incorporating into the [Agreement] this two[-]page checklist of claims evidences the intent to resolve these matters.

c. Concerning the past attorney['s] fees, [P]aragraph []10 of the [Agreement] specifically states that Claimant's [a]ttorney 'is accepting $250,000.00 as his fee which covers [WC]' as well as the civil action[s] in Bucks and Erie Counties . . . . This language immediately follows the reference to the 'myriad of past Decisions and Orders' which suggests a resolution of past claims. The word 'accepting' suggests a compromise of a larger sum. This paragraph alone shows intent to resolve the attorney['s] fee claim and there is nothing in the Agreement to suggest that the parties intended to preserve the claim for unreasonable contest fees above and beyond this sum of $250,000.00. Moreover, the two-page checklist of outstanding claims incorporated in the [Agreement] specifically included the past awards for attorney['s] fees including the quantum legal fee awarded by [the September 21, 2010 WCJ decision] and [P]aragraph []17 of the [Agreement] specifically references these past awards of attorney['s] fees as justification to raise the total attorney['s] fee payment to $250,000.00[.] In short, the [Agreement] included the claim for past attorney['s] fees awarded in prior [WC] matters upon which the current Penalty Petition is based.

d. As part of the [Agreement], the parties agreed to withdraw all appeals and petitions and to end the civil litigation. This again shows the intention to resolve all past matters.

e. Claimant argues that the matters awarded under [the September 21, 2010 WCJ decision] survived the settlement because [P]aragraph []19 created an exception in the [Agreement]. However, what survived were not the past claims against [Erie]. Rather, what survived were possible claims against other insurance companies, the joined defendants whom [the September 21, 2010 WCJ decision]

27

previously dismissed. In this paragraph the parties agreed that Claimant's work activities from August 19, 2002 through December 17, 2002 resulted in an 'aggravation' or a new injury while a different carrier was on the risk. The parties attempted to design the settlement to allow further litigation on these past claims against other insurance carriers, but not Erie.

f. Finally, the [Agreement] arose out of a mediation. On February 13, 2012, the parties executed a Post[-]Mediation Agreement in which the terms of the negotiated resolution were expressly set forth. The sum of $750,000.00 was to be paid as a 'full settlement of all claims' asserted against Employer and [Erie] (D-1, par. []1, emphasis added). This wording is clear, unequivocal and quite encompassing. Paragraph []2 of the Post[-]Mediation Agreement also states that [] Claimant shall satisfy and hold defendants harmless for, among other things, 'attorney[']s fees and *liens of any type*' (emphasis added). The Post[-]Mediation Agreement clearly shows the intention to resolve all claims including attorney['s] fees issues between the parties.

WCJ 5/9/14 Dec. at 4-5 (underlining and italics in original).

The Board agreed, holding:

Claimant relies almost exclusively on the language of [Agreement] Paragraph 19, in which the parties agreed that with the exception of the Appeal at A10-1810 [(relating to the September 21, 2010 WCJ Decision)], they would withdraw all outstanding petitions and appeals filed in the matter. Claimant contends that the payments for hospital and surgical services ordered by the [September 21, 2010 WCJ Decision] were not a matter involved in the approved [Agreement] because it expressly left open the findings, conclusions, awards and ruling of that [September 21, 2010 WCJ Decision]. However, the paragraph must be read in its entirety. In it, Claimant and Erie both agreed that each party retained the right to look for any other carrier which might be responsible for payment of benefits for Claimant's work injuries, and that the original Decision of the WCJ

28

correctly determined that Erie was responsible for Claimant's compensation as of October 12, 2000, but that Claimant's work activities in 2002 resulted in an aggravation or new injury. That paragraph also must not be read in a vacuum but as part of the greater [A]greement of the parties. In the next paragraph, Claimant and Erie agreed that they both believed that SWIF was responsible for ongoing benefits as of December 17, 2002. The WCJ found that what survived by virtue of this language was not past claims against Erie but possible claims against other insurance companies. The WCJ's determination is cogent and logical.

Further, the [Agreement] specifically states that the matter was resolved at mediation before WCJ Snyder and a 2-page outline of due and owing benefits was utilized as a guide in effectuating the settlement. That 2-page outline of due and owing benefits specifically references the ordered payment of disability benefits and medical expenses payable to Drs. O'Brien and Black and Hahnemann Hospital, among others, as well as penalties, costs and quantum meruit fees payable to Claimant's counsel. Looking to the Post[-]Mediation Agreement that led to the [Agreement], the parties agreed that Erie would pay $750,000.00 in 'full settlement of all claims asserted in the above-captioned litigation,' referencing the Bureau claim number pertaining to the October 12, 2000 injury date. They agreed that Claimant would 'satisfy and hold [Employer/Erie] harmless for any claim for costs, disbursements, attorney['s] fees and liens of any type.' (Exhibit D-1)[.[FN24]] The WCJ found, and we agree, that this wording is clear and encompassing and shows the intention to resolve all claims, including those for attorney's fees, between the parties with respect to the October 12, 2000 injury date for which Erie agreed i[t] was the liable party. There is no allegation that [Employer] has not complied with the terms of the [Agreement] and we believe [Employer] has acted pursuant to the spirit, and plain language, of the [Agreement]. The hallmark of a [compromise and release] is finality.

Board 4/22/16 Op. at 32-33.[25]

_____

[25] In footnote 24 of the Board's April 22, 2016 opinion, the Board states:

29

Based upon the language of the Agreement, this Court finds no error in the WCJ's interpretations of the parties' clear intentions thereunder, nor the Board's review thereof, which was also supported by the record. Accordingly, Claimant did not meet his burden of proving that Erie violated the Act. Therefore, the Board properly affirmed the WCJ's dismissal of his Penalty Petition based upon the Agreement.

Lastly, Claimant contends that the WCJ's and the Board's determinations relative to his Penalty Petition were not reasoned decisions. Section 422(a) of the Act provides, in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which [he] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence.

---

> We reject Claimant's assertion that the medical providers at issue were not [parties] to the [Agreement] and Erie therefore remains responsible for those payments. Claimant and Erie entered into a[n Agreement] which released Erie from all liability for medical benefits owed pursuant to the myriad of past decision and orders and as a result, Claimant and Erie compromised the medical bills. The providers would lack standing to bring a penalty petition based on alleged nonpayment of expenses. *Lincow v.* [*Workers' Comp. Appeal Bd.*] *(Prudential Sec*[.]*, Inc.)*, 832 A.2d 569 (Pa. Cmwlth. 20[0]3).

Board 4/22/16 Op. at 33. However, it is clear on the face of the Agreement that Claimant and Erie settled only disability payments. In Paragraph 7 of the Agreement, when asked: "Is this [Agreement] a resolution of **medical benefits** for the injury referenced in Paragraphs 1 and 4?" The parties replied, "no." Agt. ¶ 7 (bold emphasis in original).

30

77 P.S. § 834. "A capricious disregard of evidence occurs only when the fact[]finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004).

Here, the Board declared: "[A]s the [WCJ's decision] contains necessary findings of fact and is capable of meaningful appellate review, . . . we reject Claimant's contention that it is not reasoned." Board 4/22/16 Dec. at 33. This Court agrees that the WCJ did not ignore any evidence, but rather stated in distinct detail the rationale for determining that Employer/Erie did not violate the Act and, thus, satisfied the Agreement. Therefore, the WCJ's decision denying Claimant's Penalty Petition was well-reasoned pursuant to Section 422(a) of the Act. Accordingly, the Board did not err in upholding the WCJ's Penalty Petition decision.

**Erie's Appeal from the Board's August 22, 2016 order**
**(Rehearing Petition)**

In its Rehearing Petition, Erie asserted that the Board erred by denying its rehearing petitions. However, on August 23, 2018, Erie filed an Application to Discontinue its appeal from the Board's August 22, 2016 order, which this Court hereby grants. Accordingly this issue is moot.

**Conclusion**

For the above reasons, that portion of the Board's April 22, 2016 order affirming the WCJ's May 9, 2014 dismissal of Claimant's Penalty Petition is affirmed. The portion of the Board's April 22, 2016 order reversing the WCJ's December 16, 2013 decision that Erie is liable for Claimant's indemnity benefits after December 17, 2002 is reversed. Accordingly, Erie would be liable for Claimant's indemnity benefits after December 17, 2002; however, Erie's liability for Claimant's indemnity benefits after December 17, 2002 was settled pursuant to the Agreement.

Erie's Application to Discontinue its appeal from the Board's August 22, 2016 order, filed at No. 1467 C.D. 2016, is granted. Claimant's Motion to Dismiss LMI is granted.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Sokalsky, Jr.,     :
       Petitioner  :
           :
    v.       :
           :
Workers' Compensation Appeal  :
Board (Bradley Graphics Solutions, Inc. :
and Erie Flagship Insurance Company :
a/k/a Erie Insurance Company),  : No. 824 C.D. 2016
      Respondents :

Erie Insurance Company a/k/a   :
Flagship City Insurance Company,  :
       Petitioner  :
           :
    v.       :
           :
Workers' Compensation Appeal  :
Board (Sokalsky, Jr., and Bradley  :
Graphics Solutions, Inc., and   :
LMI Insurance Co. (In Bankruptcy)  :
and State Workers' Insurance Fund), : No. 1467 C.D. 2016
      Respondents :

## O R D E R

    AND NOW, this 29th day of October, 2018, the portion of the Workers' Compensation Appeal Board's (Board) April 22, 2016 order affirming the Workers' Compensation Judge's (WCJ) May 9, 2014 dismissal of William Sokalsky, Jr.'s (Claimant) Petition for Penalties is AFFIRMED. The portion of the Board's April 22, 2016 order reversing the WCJ's December 16, 2013 decision that Erie Insurance Company a/k/a Flagship City Insurance Company (Erie) is liable for Claimant's workers' compensation indemnity benefits after December 17, 2002 is REVERSED. However, Erie's liability for Claimant's indemnity benefits after December 17, 2002 was settled pursuant to the Petition to Approve Compromise and Release Agreement By Stipulation.

Erie's Praecipe to Discontinue and End its appeal from the Board's August 22, 2016 order (No. 1467 C.D. 2016), which this Court treated as an Application to Discontinue, is GRANTED, and that matter is discontinued and ended. Claimant's Motion to Dismiss LMI Insurance Company is GRANTED.

_____
ANNE E. COVEY, Judge